GEORGE COPPELL, as Survivor of Himself and DAVID DUNHAM WITHERS, Deceased, Respondent, *v.* FRANK C. HOLLINS and Others, Impleaded with Others, Appellants.

*Railroads — reorganization committee — recovery of advances — termination of the trust — effect of one member failing to act.*

In an action brought by certain plaintiffs, who with the defendant Frank C. Hollins were members of a committee of the first consolidated mortgage bondholders of the St. Louis and Chicago Railroad Company, for a settlement of their accounts and for reimbursement of advances made by the plaintiffs and a distribution of any surplus among the parties entitled thereto, it appeared that there were upon the property of the company two mortgages prior to that described as the first consolidated mortgage; that the holders of bonds under the second mortgage had surrendered their bonds and had accepted in exchange bonds issued under the first consolidated mortgage; that default had been made in the payment of interest upon the bonds issued under the first mortgage and upon those issued under the first consolidated mortgage and that suits had been brought

by the trustees under each of said mortgages to foreclose the same. The committee in question was formed under an agreement which contemplated that the committee should purchase the mortgaged property at the sale, for which it had been advertised, at a price not exceeding the amount due upon the first mortgage and upon the first consolidated mortgage; that the bondholders were to place their bonds at the disposal of the committee to be used in purchasing the property; that a new corporation was to be formed; that it was to issue new securities; that the·committee was to distribute them and that the expenses and liabilities of the committee were to be charged upon the bonds and upon the proceeds of the sale of the property.

It further appeared that Hollins undertook to make such arrangements as would enable the·committee to purchase the property and stated that certain persons and corporations would take the new securities; that the committee bid in the property upon a sale in foreclosure under the first mortgage for $570,000 and paid in cash $57,000, which it obtained from the Holland Trust Company; that Hollins entirely failed in his efforts to negotiate the new securities; that his acts indicated that his principal object was to secure control of the new corporation which was to be formed, which resulted in a disagreement between him and his associates on the committee; that it was finally agreed that Hollins should not resign from the committee, but that he should not participate personally in its action, but should abide by the action of the person who was acting as counsel for the committee; that the time for paying the balance of the purchase price was approaching, and that as the Holland Trust Company refused to make any further advances the committee, with its assent, applied for relief to the Central Trust Company; that the Central Trust Company agreed to make the committee a loan upon terms which, among other things, required the committee to pledge all the bonds which had been deposited with it, and the two members, other than Hollins, to assume a personal liability for the loan; that with this loan the committee were enabled to proceed and organize a new corporation; that to this new corporation the property sold in foreclosure was conveyed; that such new corporation thereupon issued the securities in question, and which had been provided for by the reorganization agreement; that the committee found it impossible to dispose of the new securities in any manner; that the bondholders rendered them no assistance in this regard, and that finally all the securities in question were sold by the Central Trust Company to secure repayment of its loan, there being included in such sale the pledged first consolidated mortgage bonds and the new securities issued through the committee; that at the sale all the securities sold were bought in by the plaintiff, David D. Withers, and by a firm of which George Coppell was a member (Withers and Coppell being two of the three members of the reorganization committee), and that at the time when the present action was begun all the securities were in the possession or under the control of the plaintiffs.

*Held*, that the evidence tended to show that Coppell and Withers acted in good faith and were entitled to be allowed for the moneys advanced by them or upon their credit on behalf of the bondholders;

That a claim that the action was prematurely brought, in that, as the delivery of the new securities to the old bondholders had not yet taken place, the trust had not terminated, could not be sustained, as until the committee was repaid its advances it was not called on to make such delivery to the old bondholders, who apparently were not disposed to make such repayment;

That if the committee were to be deemed trustees, the fact that Hollins did not act in most of the transactions was not material, in view of the fact that the bondholders knew that he would not act in concert with the other members of the committee, and further because he had, by consent of all parties, agreed to abide by the action of the counsel for the committee;

That the fact that the committee applied to the Central Trust Company after the Holland Trust Company, with which they had contemplated dealing, had refused to render assistance, was not material, as the committee were not restricted as to the source from which they should obtain money, and as it did not appear that the bondholders had suffered by the change.

APPEAL by the defendants, Frank C. Hollins and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of January, 1893, upon the decision of the court rendered after a trial at the New York Special Term, with notice of an intention to bring up for review upon such appeal an interlocutory judgment entered in said clerk's office on the 13th day of October, 1892, and an order made at the New York Special Term and entered in said clerk's office on the 12th day of January, 1893, confirming the report of a referee appointed by said interlocutory judgment, and overruling the exceptions to said report.

*James W. Hawes*, for the appellants.

*William G. Choate*, for the respondent.

PARKER, J.:

The original plaintiffs herein, George Coppel and David Dunham Withers, who, together with Frank C. Hollins, were constituted members of a reorganization committee of the first mortgage consolidated bondholders of the St. Louis and Chicago Railway Company, by virtue of an agreement executed by the bondholders, instituted this suit for the purpose of obtaining a judicial settlement of their accounts as members of such committee; the sale of the securities in their hands, or subject to their control as such committee; and the application of the proceeds: *First.* To the reimbursement of the plain-

tiff, and, *secondly*, to the distribution of the surplus among the parties entitled thereto.

The bondholders' agreement, under which the plaintiffs and Hollins were appointed a reorganization committee, was executed by the holders of the bonds of the first consolidated mortgage on the property of the St. Louis and Chicago Railway Company. Upon the properties of that company there were two prior mortgages, under the first of which there were outstanding $500,000 of bonds, and under the second it was claimed there were outstanding bonds in a like amount. Of the first mortgage consolidated gold bonds, the company authorized the issue of $4,500,000. The first bonds, numbering from 1 to 1,000, inclusive, and of the face value of $1,000,000, were reserved to take up the outstanding bonds under the first and second mortgages. The holders of the second mortgage bonds surrendered their bonds and accepted in exchange therefor the bonds issued under the first consolidated mortgage. Default having been made in the payment of interest on both the first mortgage bonds and the first consolidated mortgage bonds, suits were brought by the trustees under each of said mortgages for their foreclosure.

While the affairs of the company were in this situation steps were taken by certain of the holders of the bonds of the first consolidated mortgage looking to the protection of their interests, but, before any agreement was reached, a decree of foreclosure and sale was entered in the suit brought to foreclose the first mortgage, and the property was advertised to be sold thereunder on the 4th day of September, 1889. Prior to the day of sale, however, and about the 21st of August, 1889, an agreement in writing was entered into by certain holders of the consolidated bonds, of which $1,100,000 were outstanding, by which the original plaintiffs herein and Hollins were appointed a committee to carry out the plan provided for in the agreement. Under the second clause of the agreement the committee were authorized to purchase the mortgaged property at any sale under the foreclosure proceedings referred to in the agreement.

The price which they were authorized to pay was limited to a sum not exceeding the amount due upon the mortgage bonds and coupons secured by the first and first consolidated mortgages.

respectively and interest unpaid, together with all liens, receiver's indebtedness, taxes or claims which should be determined by the court to be prior in interest to said bonds and coupons, and interest upon such sums, and the costs and expenses of the foreclosures, including the expenses of the committee.

To enable them to make this purchase it was agreed that the bonds of the subscribers to the agreement should be placed at the disposal of the committee, who were authorized to use the same, so far as necessary, for the purpose of purchasing the property. The third clause authorized the creation of a new corporation in the event of the purchase of the property by the committee. The fourth clause provided for the distribution of the securities of such new corporation. And the fifth clause, after referring to the matter of expenses incurred and to be incurred by the committee, provided " that such expenses and liabilities shall be a charge upon the bonds and coupons to be deposited as hereinbefore provided, and upon the proceeds thereof, or of any sale of the mortgaged property."

The committee at once procured a postponement of the sale for the purpose of obtaining the time necessary to provide for the payment of the purchase price of the property in the event of its purchase by the committee. Shortly thereafter Hollins informed his associates that he had made such arrangements as would enable them to purchase the property ; that his firm would take $200,000 of the new securities, the Holland Trust Company $200,000 and Mr. Seligman $50,000. Acting upon this understanding, the committee bid in the property on the sale under the first mortgage for the price of $570,000, and paid thereon ten per cent of the purchase price, which sum was obtained through the Holland Trust Company. There was an extension of the railroad property, however, which was not covered by the first mortgage, but was by the first consolidated mortgage, and, in order to secure title to that piece of property, judgment was taken in the action to foreclose the first consolidated mortgage, and the property sold thereunder for the sum of $50,000. The deed of such property was taken in the name of George Coppell. the chairman of the committee.

In the meantime a corporation had been organized, called the St. Louis and Illinois Central Railroad Company, to take the property purchased. Articles of incorporation were filed in October and Novem-

ber, 1889, but nothing further was done to complete this organization, as some difficulty had in the meantime arisen between Hollins and his associates on the committee, due in part possibly to the fact that the articles of incorporation last filed contained the names of directors suggested by Mr. Hollins, and whom it was presumed he could control. However that may be, it appears that at the meeting of the committee held on the 21st of November, 1889, Hollins declined to state, when requested by the chairman, how he was getting on with his financial plan, and refused to deposit with the committee his correspondence with Mr. Seligman relating to his alleged agreement to take $50,000 of the bonds. A little later Hollins stated that he was prepared to take only $100,000 of the new bonds instead of $200,000, and for these he proposed to give old first mortgage bonds. The efforts of the committee to induce the Holland Trust Company to advance the amount, which Hollins reported that the company would advance, proved ineffectual. While affairs were in this condition, and on the 6th of December, 1889, a meeting of the bondholders was held, at which it was made to appear to the bondholders that it would be impossible for the original plaintiffs and the defendant Hollins to act together any further, and it resulted in a proposition by a special committee of the bondholders, which was thereafter acted upon. The proposition was to the effect that, while the defendant Hollins should not resign from the reorganization committee, he should not attend any further meetings and should abide by whatever the counsel for the committee should approve.

The time for the payment of the balance of the purchase price, under the foreclosure of the first mortgage had, in the meantime, been extended to January 6, 1890, but the counsel for the trustee having refused to grant any further extension, the original plaintiffs herein renewed their efforts to obtain the money necessary to complete the purchase. There is some dispute as to the character of their negotiations with the Holland Trust Company, but the trial court has found the fact to be that the Holland Trust Company refused to advance any further sum of money until the bonds of the new company should be ready for delivery. It is said that the agreement of the Holland Trust Company was such that a further advance could have been enforced, but this was not a practical question, as there was then remaining but little over a week within which

FIRST DEPARTMENT, DECEMBER TERM, 1895.          [Vol. 91.

to procure the money necessary to complete the purchase, and obtain title to the property. A resort to legal proceedings was, therefore, impracticable, even could it be assumed that they would result favorably to the committee. In view of this situation it was suggested that an arrangement might be made with some other trust company, to which the Holland Trust Company assented, and subsequently an arrangement was made with the Central Trust Company. But in order to procure the loan from the Central Trust Company, Coppell and Withers were obliged to pledge all of the bonds which had been deposited with them; to advance all moneys in excess of $500,000, which might be needed for reorganization purposes, and to personally guarantee the trust company against loss on their advance of $500,000. With the funds thus obtained from the Central Trust Company, supplemented by the moneys of the said Coppell and Withers, they (the said Coppell and Withers) were enabled to pay the sum which the Holland Trust Company had advanced, together with the balance of the purchase money and such expenses as were incurred in the work of reorganization.

After this sale under the decree foreclosing the first consolidated mortgage, a new corporation called the North and South Railroad Company of Illinois was organized through the efforts of the said Coppell and Withers, and the property which had been purchased under the several foreclosures was conveyed to the new corporation, at which time these securities, which were provided for by the reorganization agreement, were created and issued by such company to Coppell and Withers.

Coppell and Withers found it impossible to dispose of the new securities, and at different times they sent out circulars to the bondholders notifying them to participate in the carrying out of the plans which were suggested for relieving the situation which the said Coppell and Withers found quite embarrassing. But nothing resulted from these efforts. When November, 1890, came, the Central Trust Company informed Coppell and Withers that repayment of their advances must be made on or before the 1st of December, 1890. Of this fact, notice was given to the bondholders on the fifteenth of November, and a plan was suggested by Coppell and Withers for the taking of the new securities by the bondholders, on such terms as would accomplish the result. An answer was

requested by the twenty-fifth of November, but none was received. Thereupon the trust company gave formal notice to Coppell and Withers of the sale of the securities on the tenth of December. Notices of sale were at once mailed to each of the bondholders by the chairman of the committee, but no action was taken thereon by the bondholders, and on the day appointed for the sale all of the securities which had been pledged, including the first consolidated mortgage bonds which had been deposited, and the new securities which had been issued to the committee, were bought in by the plaintiff Withers and the firm of Maitland, Phelps & Co., of which the plaintiff Coppell was a member. At the time of the commencement of this action all of such securities were in the possession or subject to the control of the original plaintiffs. During the pendency of the action, and on February 18, 1892, the plaintiff Withers died, and the action has been continued by the plaintiff Coppell, as survivor. The original plaintiffs in this suit made no other claim to these securities than that they were subject to a lien for the moneys advance. by them or upon their credit on behalf of the bondholders. And such claim is not unreasonable, provided, of course, Coppell and Withers acted in good faith and used such reasonable and ordinary care and caution as prudent men usually observe in the conduct of affairs of such character. It was apparently feared by some one connected with the reorganization agreement that a situation might grow out of it in which it would be claimed that a mistake had been made by the committee; that some other action would have been wiser, or that the securities could have been disposed of on better terms if the committee had proceeded along different lines. The result was a provision in the agreement that the members of the committee should not be personally liable for any mistake of law or fact. This provision will not be further adverted to, for, as we view it, the plaintiff is not called upon to invoke its aid in support of the judgment which has been rendered.

The charge preferred against the original plaintiffs of acting in bad faith seems to have very trifling support. It consists mainly in the fact that there were dissensions between the plaintiffs and Hollins, but for which it is suggested that the financial plan which had already been adopted would have proved successful. For these

dissensions the defendants, among whom are Frank C. Hollins, would hold the plaintiffs responsible.

It is assumed that the proper inference of fact to be drawn from the whole transaction is, that Coppell and Withers refused to act further with Hollins, because Hollins had so planned it that the articles of incorporation of the new corporation provided for by the bondholders' agreement should contain only the names of directors friendly to him and presumably under his control. If such an inference of fact should be drawn it would not, when considered in connection with the other facts, support a finding of bad faith. It is quite evident that Coppell and Withers were justified in asking to be relieved from the trust if Hollins was longer to continue actively with them. Down to that time he had accomplished but little in the direction of substantial benefit to the committee, but he had accomplished much towards the scheme which he apparently had in mind of controlling the management of the new corporation after the committee had done its work. At the very outset he seems to have cultivated the appearance of being the active and forceful member of the committee, so far as financing the reorganization was concerned. And this cultivation of appearances was, in a measure, temporarily successful, because it enabled him to have named in the articles of association the persons whom he desired as directors. But it was only a partial success, for this act indicated to his associates on the committee that he had schemes in view other than those embraced within the agreement; that while working with his associates nominally he was attempting to secure some permanent or supposed advantage without their knowledge.

The very fact of this outside intrigue, in which he did not give his associates his confidence, was sufficient to justify them in hesitating to further act with him. But had it been the fact that the conduct of Hollins was not such as to justify the refusal of Coppell and Withers to have further personal dealings with him, it would not materially help out the charge of bad faith. There is nothing in that fact, standing alone, which would justify an inference that the dissension was occasioned by a desire on the part of Coppell and Withers to wrong the bondholders whom they represented; or that such dissension was due to a desire on their part to profit in any way out of the enterprise. On the other hand, every act of Coppell and Withers,

so far as we can see, indicated a desire on their part to faithfully perform the trust committed to them.   Nor does it appear, we think, that the dissensions between the original plaintiffs and Hollins have been the cause of the failure to work out the scheme of reorganization which the parties to the agreement contemplated.   When the time came for action, Hollins was not prepared to take the number of bonds which he said in the first place he would take, nor was Seligman willing to take his bonds, and the Holland Trust Company did not take the bonds which Hollins said it would take.   How much of real foundation there was to Hollins' early boast, that he had provided for $450,000 of the purchase price of the property sold under the decree foreclosing the first mortgage, it is difficult to say.   Its results, whatever the cause, were trifling.

The failure to negotiate enough of the securities with which to pay the purchase price was not encouraging, but, nevertheless, Coppell and Withers, by pledging their own credit, as well as the bonds intrusted to them, together with the securities of the new corporation, obtained the necessary money to complete the purchase.   And when this had been accomplished they had done everything which they were called upon to do under the agreement, except the negotiation of such of the securities as were necessary to pay for the property of the new corporation and defray the expenses of the committee, and the distribution of the rest of the stock of the new corporation among the bondholders who were parties to the agreement.   The failure to sell the securities does not seem to have been the fault of Coppell and Withers.   There was no market for them.   No one could be found who would invest in them.   Not even the bondholders, who are defendants here, were willing to take them, if such taking involved the payment of the purchase price of the property of the new corporation and the expenses of the committee.

The trial judge found at Special Term that Coppell and Withers were not guilty of fraud, and that they acted throughout in good faith, and in that finding we concur.

We come now to the other questions presented by the appellants. The first is that the action was prematurely brought, the ground being that, as the delivery of the new securities to the old bondholders has not yet taken place, the trust is not terminated.   If this position be a sound one, then the present indications are that such an action as

the one in question can never be brought. The securities cannot be delivered to the old bondholders until the committee shall have been paid for the property which they transferred to the new corporation, and upon the faith of which its securities were issued. And the action of the bondholders in the past certainly affords no assurance of a movement in that direction in the future. This statement indicates what the fact is, that the trust was practically terminated. All that the committee could possibly do, until after payment of the indebtedness, had been done. Every plan which they could think of had been suggested to the bondholders in order to obtain the money necessary for the release of the securities from pledge and their distribution among the bondholders. But all such suggestions were without results. There was nothing, therefore, to do to relieve the situation but to bring this suit.

Appellants next say that the plaintiff, as survivor of himself and Withers, should not be repaid the money advanced by said Coppell and Withers to buy the property for the new corporation out of the securities in his hands or under his control, because in nearly every one of the steps taken to bring about that result two of the members acted without notice to the third. That they did act without the third is unquestioned, but these defendants are not in a position to make the objection that the office and duties of a trustee cannot be delegated by one trustee to another, for the bondholders knew, in advance of any action being taken by two members of the committee in the absence of the third, that there was no other way by which the agreement could be carried out. And for that reason the bondholders, at a meeting held on the 6th day of December, 1889, at which the defendant Hollins had avowed his inability to provide the means necessary to complete the purchase of the mortgaged property, appointed a special committee for the purpose of arranging a basis on which Coppell and Withers might proceed alone without the intervention of Hollins. The plan approved was that, while Hollins should not participate personally in the action of the committee, he should abide by the action of Mr. A. H. Joline, who had been selected by him as the counsel for the committee. This proposition was accepted by Coppell and Withers, and thereafter their action was taken accordingly, and certainly these

defendants are not in a position to complain, because Coppell and Withers subsequently carried out such arrangement.

The objection taken to the substitution of the Central Trust Company for the Holland Trust Company is without force. There is nothing in the agreement expressly or impliedly forbidding it. The only provision relating to the depositing of securities is contained in the second clause, and provides that the bondholders shall "deposit the bonds and coupons held by us, respectively, with Holland Trust Company at its office, No. 7 Wall St., New York city, to be delivered to the committee upon request, taking therefor its negotiable receipts, and at the same time we deposit to the order of the committee five dollars for each bond so deposited."

While the Holland Trust Company was made the depository of the bonds and the five dollars required to be deposited with each bond, it was required to make delivery thereof to the committee on request. The plan upon which the committee were to proceed was marked out in the agreement, but in nowise were they restricted as to the source from which to obtain such moneys as they should be called upon, to borrow or raise, in order to carry out the plan.

No opportunity exists to charge that the change was capriciously made or that the bondholders have suffered thereby. Whatever differences exist between the committee and their counsel and the officers of the Holland Trust Company, as to the precise nature of the conversations between them, there is no pretense that the Holland Trust Company was willing to take the bonds that it is claimed to have promised to take. Nor is it the fact that it was willing to advance the money necessary to pay the balance of the purchase money. And at the time of the change from the Holland to the Central Trust Company, there remained only about a week within which to complete the purchase and take the first step in the plan of the bondholders and the committee.

The change was, therefore, a matter of necessity. There are several other technical objections, but they seem to us not to merit discussion.

As we view the situation presented by this record, Coppell and Withers in good faith did everything within their power to effectuate the plan of the committee. They did far more than they were called upon to do by the agreement to protect the bondholders, by advanc-

ing their own moneys and pledging their personal credit to secure moneys for the purposes of the agreement which they could not procure upon the faith of the securities which the bondholders intrusted to them. And the judgment awards to Coppell, as survivor of himself and Withers, no greater protection than is his due.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.